## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAVID W. HARKER                                        :

    Plaintiff                                        :

    v                                        :     Civil Action No. JFM-05-70

WARDEN BCBIC                                        :

    Defendant                                        :

. . . . o0o . . . .

## MEMORANDUM

This civil rights action, filed on January 10, 2005, concerns plaintiff's claims arising from alleged deprivations of property and other rights during his incarceration at the Baltimore Central Booking and Intake Center (BCBIC). Pending is defendant's Motion to Dismiss or for Summary Judgment. Paper No. 22. Plaintiff has responded in opposition to the motion. Paper No. 30 and 31. Upon review of the papers filed, this court finds that a hearing in this matter is unnecessary. For the reasons set forth below, defendants' motion, construed as a motion for summary judgment, will be granted.

### Background

Plaintiff claims that property taken from him at the time of his July 2, 2004 arrest, was never mailed to a third party as he requested, nor released as provided by BCBIC policy. Paper No. 1 at p. 4; Paper No. 31. The property included two cell phones; a wallet containing identification, credit cards and other personal papers; a BMW cap; and an uncashed pay check dated July 2, 2004. Paper No. 31 at p. 1. Defendant claims that property taken from plaintiff upon his arrest was released to the person designated by him to receive the property. Paper No. 22 at Ex. I. Plaintiff admits that the

property listed was in fact released, but it is not the property at issue in this case.[1]  Paper No. 31.

Plaintiff also claims that he was denied access to the BCBIC Canteen for over a month, denying him any ability to buy hygiene items as well as writing material.  Paper No. 1 at p. 4.  In addition, he claims that mail sent to him at BCBIC was incorrectly marked "released; return to sender" when he was still incarcerated at the facility.  *Id*. at p. 5.  One of the items improperly returned was a notice from the Baltimore City Impound Yard regarding Plaintiff's 1999 Chevrolet van.  *Id*.  Plaintiff claims that the van was sold at public auction because he did not receive the notice.  *Id*.  Plaintiff also claims that newspapers to which he subscribed were not delivered to him and that he was prevented from making phone calls because the system would not recognize his identification number.  *Id*.

Finally, plaintiff claims that BCBIC staff refused to transport him to the Baltimore City District Court even though a writ had been issued for his appearance on July 15, 2004.  Paper No. 31 at p. 2.  According to plaintiff, he was brought to the Transportation Section on the morning of July 15, 2004, but was told to return to his cell by the transportation officer because "your name is not on my list".  *Id*.  As a result of the failure to transport plaintiff to court for his hearing, a failure to appear (FTA) bench warrant was issued on July 20, 2004.  *Id*.

Defendant explains that some of the problems encountered by plaintiff during his incarceration were caused by the number of his previous arrests.  Paper No. 22 at Ex. 1 ¶¶ 6– 14.  Although a detailed explanation regarding the systems used to identify incoming inmates as either a new detainee or one who has returned is provided by defendant, it fails to explain why the system failed in this instance.

---

[1] A review of the property list provided by defendant reveals that plaintiff's assertion is correct. The property that was released did not include the items plaintiff asserts were never returned to him. Paper No. 22 at Ex. I.

With respect to plaintiff's claim that transportation officers failed to transport him to court, defendant asserts that no writ was ever received for plaintiff's transportation. Paper No. 22 at Ex. 1, p. 5. Defendant also explains that subscriptions to publications are permitted in BCBIC upon approval, but that the transient nature of the inmate population often makes receipt of publications impractical. *Id*. at p. 7. Regarding plaintiff's claim that his mail was improperly returned to its sender, Defendant states only that the policy at BCBIC is to return mail if the inmate is no longer there or if it contains contraband. *Id*. No suggestion is made that plaintiff's claim regarding his mail has no basis in fact.

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First*

*Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a

particular claim must factually support each element of his or her claim.  "[A] complete failure of proof

concerning an essential element . . . necessarily renders all other  facts immaterial."  *Celotex*, 477 U.S.

at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or

her responsibility to confront the motion for summary judgment with an affidavit or other similar

evidence.  *Anderson*, 477 U.S. at 256.

## Analysis

The constitutional protections afforded to a pre-trial detainee as provided by the Fourteenth

Amendment are co-extensive with those provided by the Eighth Amendment.  *See Bell v. Wolfish*, 441

U.S. 520, 535 (1979).  The inquiry with respect to conditions alleged in a pre-trial detention facility is

whether those conditions amounted to punishment of the pre-trial detainee.  Although due process

proscribes punishment of detainee before proper adjudication of guilt, *id.*, "not every inconvenience

that is encountered during pre-trial detention amounts to 'punishment' in the constitutional sense."

*Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988).   A particular restriction or condition of

confinement amounts to unconstitutional punishment in violation of the Fourteenth Amendment if it is

imposed by prison officials with the express intent to punish, or if it is not reasonably related to a

legitimate, non-punitive goal.  *Bell*, 441 U.S. at 538– 39 (restrictions or conditions that are arbitrary or

purposeless may be considered punishment).  In determining whether the challenged conditions amount

to punishment, it is not the province of this court to determine how a particular prison might be more

beneficently operated; the expertise of prison officials must be given its due deference.  *See Sandin v.

Conner*, 515 U.S. 472, 482 (1995).

4

Conditions alleged by plaintiff in the instant case, including the return of his mail, the inability to make a phone call, and the failure to permit him to receive publications to which he had subscribed, do not appear to have been intentionally imposed, nor do they amount to punishment. The deprivations are made less egregious in light of the fact that they occurred for a period of one month or less.[2] At most, these conditions were the result of negligence, which cannot form the basis of a constitutional claim. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent official acts causing unintended deprivations not a basis for a constitutional claim).

Plaintiff also asserts a claim that he was wrongfully deprived of his property[3]. In cases such as this, all the Due Process clause requires is the availability of an adequate post-deprivation remedy. *Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds, Daniels*, 474 U. S. 327 (1986). Maryland's Tort Claims Act provides such a remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).

Plaintiff claims that his personal property was not returned to him or disposed of as he directed and that his van was "lost" because his mail was improperly returned to the sender. He offers no evidence, however, that the deprivations were the result of anything other than incompetence or

---

[2] It is unclear from plaintiff's allegations whether he was unable to make a phone call the entire time he was incarcerated at BCBIC.

[3] "Prison administrators have broad discretion in the management of correctional institutions. Unless other rights such as religion or speech are involved, jails may thus constitutionally disallow the possession of personal property." *Bannan v. Angelone*, 962 F. Supp. 71, 73-4 (W. D. Va. 1996) (citations omitted).

negligence.[4]  Plaintiff was not left without a remedy.  He could have filed a tort claim filed with the

appropriate authority, followed by an action in state court if required.

Lastly, the failure to transport plaintiff to court for a hearing which resulted in an FTA warrant

being issued is, again, a negligent act which cannot form the basis of a constitutional claim.[5]  Moreover,

plaintiff has failed to establish an injury caused by the failure to transport him to court.  Although plaintiff

claims he was required to prove the court that he was incarcerated at the time the warrant was issued,

there is no allegation that he was unable to establish that fact, or that he suffered dire consequences as a

result of having to provide this explanation.  Paper No. 1 at p. 5.  His additional allegation that he was

incarcerated 77 hours past his court-ordered release date is unsupported by any objective evidence.

*Id*.  There is also no evidence that plaintiff was required to forfeit a bail bond as a result of the failure to

appear warrant.  *See* Md. Rule 4-217 (i)(1).  Even if plaintiff had been required to forfeit a bail bond,

his inability to require correctional staff to transport him to court is evidence that his failure to appear

was not intentional.  *See* Md. Rule 4-217(i)(2) (requiring forfeiture of bond stricken upon good cause

shown for failure to appear).

### Conclusion

Construing the facts in a light most favorable to plaintiff, the allegations raise, at most, claims of

negligence.  While plaintiff's palpable frustration is understandable, the allegations do not state a

constitutional claim.  Based on the evidence presented, defendant is entitled to summary judgment in her

favor.  A separate order follows.

---

[4] Defendant appears to concede that negligence on the part of individual BCBIC employees who are not named as defendants in this case was the cause of Plaintiff's loss. Paper No. 22 at p. 14.

[5] To the extent that plaintiff has sued only the warden of BCBIC for the conduct of staff under her supervision, he has failed to allege an adequate ground for supervisory liability.  The doctrine of *respondeat superior* is inapplicable in the context of a § 1983 claim.  *See Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978)

August 3, 2005                          /s/ _____
Date                                              J. Frederick Motz
                                                  United States District Judge